NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2069

_____

ROBERT K. DEE, JR.,
                                    Appellant
                    v.

BOROUGH OF DUNMORE;
BOROUGH OF DUNMORE COUNCIL;
JOSEPH LOFTUS, individually and as Borough Manager;
THOMAS HENNIGAN, JOSEPH TALUTTO, FRANK PADULA,
LEONARD VERRASTRO, MICHAEL CUMMINGS,
individually and as Councilman,

_____

No. 11-2279

_____

ROBERT K. DEE, JR.,

                    v.

BOROUGH OF DUNMORE;
BOROUGH OF DUNMORE COUNCIL;
JOSEPH LOFTUS, individually and as Borough Manager;
THOMAS HENNIGAN, JOSEPH TALUTTO, FRANK PADULA,
LEONARD VERRASTRO, MICHAEL CUMMINGS,
individually and as Councilman,
                                    Appellants

_____

On Appeal from the United States District Court

for the Middle District of Pennsylvania
(D.C. No. 3-05-cv-01342)
District Judge:  Honorable A. Richard Caputo

Argued February 9, 2012

Before:  SLOVITER, VANASKIE, *Circuit Judges*, and
POLLAK,* *District Judge*

(Filed : April 6, 2012)

Cynthia L. Pollick, Esq.  (Argued)
The Employment Law Firm
363 Laurel Street
Pittston, PA  18640

      Attorney for Appellant, No. 11-2069
      Cross-Appellee No. 11-2279

Karoline Mehalchick, Esq.  (Argued)
Oliver, Price & Rhodes
1212 South Abington Road
Clarks Summit, PA  18411

      Attorney for Appellees, No. 11-2069
      Cross-Appellants No. 11-2279

OPINION

SLOVITER, *Circuit Judge*.

Robert Dee, Assistant Fire Chief, filed suit under 42 U.S.C. § 1983 and various

state laws against the Borough of Dunmore, the Borough Manager, and five members of

_____

   * The Honorable Louis H. Pollak, Senior Judge, United States District Court for

2

the Borough Council (collectively "Borough"), alleging he was suspended without notice by the Borough, based on its determination that Dee failed to complete two training requirements. The jury awarded Dee $150,000 in compensatory damages and $6,000 in punitive damages. At the Defendants' request, the District Court granted a remittitur, reducing the jury verdict from $150,000 to $50,000 and dismissing the punitive damage award of $6,000. Dee rejected the remittitur and proceeded to the second jury trial limited to the issue of compensatory damages. The second jury awarded Dee $47,500 in compensatory damages. Dee appeals. The Borough cross-appeals the District Court's denial of its motion for judgment as a matter of law on Dee's claim that his right to procedural due process was violated.

## I.

### Background

Dee became a firefighter for the Borough in 1987. In May 2005, Joseph Loftus, the Borough Manager, began an investigation into the certification of all Borough employees, including the members of the Fire Department. Loftus requested that Chief Arnone ("Arnone") of the Fire Department send him a memo outlining the necessary qualifications and certifications for full-time work, and documentation on the full-time staff who met those criteria.

Arnone responded there was no indication that Dee had the requisite EMT training

the Eastern District of Pennsylvania, sitting by designation.

or had attended State Fire Academy Training. After Loftus notified the members of the Borough Council, they voted to remove Dee from the schedule with pay, pending a hearing eight days later.[1] The Borough explained the reason for the immediate suspension on the ground that its main concern was the protection and safety of the firefighters, taxpayers and citizens. One council member, Joseph Talutto, stated that not only was there a duty "to protect the town," but the Borough Council also did not want "to get blasted in the paper." App. at 144-45. The suspension was publicized in the local media.

On July 6, 2005, at a later personnel hearing, the Borough Council was provided with additional documentation and determined that Dee was in compliance with the requirements. Council reinstated Dee to the schedule. Dee had not been suspended from employment nor suffered any lapse in pay, other benefit or service time for seniority or retirement date purposes.

At trial in January 2010, the jury determined that Dee's due process rights had been violated because he was suspended without notice, explanation of the evidence against him, or an opportunity to rebut the erroneous allegations that he was unfit to serve as a firefighter after 18 years of service. The jury awarded Dee $150,000 in compensatory damages and $6,000 in punitive damages ($1,000 against each individual

---

[1] The members of the Borough Council at the relevant time were Michael Cummings, Thomas Hennigan, Frank Padula, Joseph Talluto, Leonard Verrastro, Tim Burke, and Paul J. Nardozzi.

defendant).

Following the trial, the Borough moved for a remittitur, which was granted by the District Court who reduced the jury verdict from $150,000 to $50,000 and dismissed the punitive damage award of $6,000. Dee rejected the remittitur and proceeded to a second jury trial solely on the issue of compensatory damages. In his second jury trial, Dee was awarded $47,500 in compensatory damages. Dee appeals and the Borough cross-appeals.[2]

## II.

## Discussion

## A.

The use of a conditional remittitur is appropriate when the trial judge finds that a decision of the jury is clearly unsupported or excessive. *See Cortez v. Trans Union LLC*, 617 F.3d 688, 715 (3d Cir. 2010) (citation omitted). This Court reviews the trial court's reduction of damages for abuse of discretion. *Id*. at 716. In this case, the District Court reduced the jury award because it held that it was inconsistent with the evidence in the case. It offered Dee the alternative of a new trial, which Dee accepted. *See Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998) (per curiam) (explaining that when a trial court determines that the evidence does not support the jury's general damages award, it "has no authority . . . to enter an absolute judgment for any other sum than that

---

[2] This Court has jurisdiction over both Dee's appeal and the Borough's cross-

assessed by the jury" without allowing plaintiff the option of a new trial (citation

omitted)).

**B.**

"In general, the determination of compensatory damages is within the province of

the jury and is entitled to great deference." *Spence v .Bd. of Educ.*, 806 F.2d 1198, 1204

(3d Cir. 1986). However, "[t]he district judge is in the best position to evaluate the

evidence presented and determine whether or not the jury has come to a rationally based

conclusion." *Id*. at 1201. Remittitur is utilized when the trial judge finds that a decision

of the jury is excessive or clearly unsupported by the evidence. *Id*.; *see also Murray v.

Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979). The reduction may not be less than

the maximum amount that does not "shock the judicial conscience." *Evans v. Port Auth.

of N.Y. & N.J.*, 273 F.3d 346, 355 (3d Cir. 2001).

The District Court relied on *Glass v. Snellbaker*, No. 05-1971 (JBS), 2008 WL

4371760 (D.N.J. Sept. 17, 2008), in determining that a remittitur was appropriate. *See

Dee v. Borough of Dunmore*, No. 05-CV-1342, 2010 WL 1626908, at \*7 (M.D. Pa. April

21, 2010) ("*Dee I*"). In *Glass*, the plaintiff sought emotional distress damages under his

claim for first amendment retaliation after being transferred to a less prestigious

employment position as a result of a speech he made. Glass had experienced elevated

blood pressure due to stress, but he continued to work after the transfer, suffered no

---

appeal pursuant to 28 U.S.C. § 1291.

6

immediate financial stress because his salary and benefits remained unchanged and, despite his concerns, there was no evidence that his reputation in the police force was diminished. *Glass*, 2008 WL 4371760, at *1-3, *20-22. Plaintiff's testimony about his daily humiliation, ostracism, and emotional distress over a two-year period, as a consequence of the defendant's retaliation was sufficient to justify a compensatory damage award of $50,000, reduced from the original jury verdict of $250,000. *Id*. at *23. Furthermore, the court noted that in cases of emotional harm not arising from discrimination that resulted in an award of over $50,000 for non-economic damages, the plaintiff usually suffered prolonged physical symptoms, or sought medical or psychological treatment. *Id*. at *22.

In this case, there is no evidence that Dee suffers long term or lasting effects from the suspension. Similar to the plaintiff in *Glass*, Dee presented evidence about his humiliation, stress, and the elevated blood pressure he experienced after the suspension. Also similar to *Glass*, Dee suffered no loss of benefits, seniority or pay, and there is no evidence of any loss of reputation among his peers. Accordingly, under the reasoning in *Glass*, an award of $50,000 was the highest possible recovery that would not "shock the judicial conscience." *Id.* at *6; s*ee also Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 955 (2d Cir. 1988) (upholding award of $50,000 for an employee who had been subject to racially motivated humiliation at work, including public embarrassment due to a publication in newspaper); *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 818, 821-22

(N.D. Ill. 2002) (upholding $50,000 each in emotional distress damages awarded to a deputy police chief and police chief for violations of their due process rights arising from suspension, termination, and publication of false charges).

For his part, Dee calls our attention to *Gagliardo v. Connaught Labs. Inc.*, 311 F.3d 565 (3d Cir. 2002), where we did not disturb a jury's verdict of $1.55 million for pain and suffering on a discrimination employment claim. But Gagliardo, unlike Dee, had life-long changes of a mental trauma, "transforming Gagliardo from a happy and confident person to one who was withdrawn and indecisive." *Id*. at 574. Dee also cites *Evans*, an employment discrimination case where we affirmed a remittitur of $375,000 for emotional distress for plaintiff who suffered from chest pains and shortness of breath, was sent to the medical department on four different occasions, had to start taking blood pressure medication, and was consistently moody and irritable, which altered her relationship with her husband and children. 273 F.3d at 352 n.5, 356. Those plaintiffs had prolonged symptoms whereas Dee did not suffer from life-altering or long term distress but only temporary elevated blood pressure which returned to a normal range within days and Dee resumed his employment as Assistant Fire Chief.

We reject Dee's claim that the District Court established an arbitrary cap on emotional distress damages. Instead, the second jury's decision to award Dee $47,500 in damages supports the District Court's conclusion based on its analysis of cases involving similar claims and damages. *Dee I*, 2010 WL 1626908, at *6-8. The District Court

8

recognized that Dee suffered from emotional distress and cited to his elevated blood pressure for a few days after his suspension but noted that it was not long term. *Id.* at *8. The District Court did not abuse its discretion when it made a discretionary decision to reduce the jury verdict from $150,000 to $50,000.

### C.

Dee also appeals the District Court's decision to vacate the punitive damage award of $6,000 at the end of the jury trial. Punitive damages may be awarded in a §1983 action when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Alexander v. Riga*, 208 F.3d 419, 430-431 (3d. Cir. 2000) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The determination of whether or not there is sufficient evidence to support an award of punitive damages is a question of law which this court reviews *de novo*. *Id*. at 430. In evaluating the reasonableness of a punitive damages award, the Supreme Court has noted as relevant the following three factors: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 580, 583 (1996). The Court has recognized that the degree of reprehensibility of the defendant's conduct is the "most important indicium" of the constitutionality of a punitive damages

award. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citing *Gore*, 517 U.S. at 575). In measuring the degree of reprehensibility, we are to consider: whether the harm caused was physical as opposed to economic; whether the defendant's actions evinced indifference to or reckless disregard for the health or safety of others; the financial vulnerability of the victim; whether the conduct was repetitive or isolated; and whether the harm was the result of intentional malice, trickery, deceit, or mere accident. *Id.* The absence of all of these factors renders suspect a punitive damages award, but the existence of any one is not necessarily sufficient. *Id*.

In *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823, 834 (3d Cir. 1994), this court affirmed the award of punitive damages when evidence showed that the plaintiff-employee was discharged in retaliation for writing audit reports that criticized authority and officials of the Philadelphia Housing Authority. In *Springer v. Henry*, 435 F.3d 268, 282 (3d Cir. 2006), we upheld an award for punitive damages when plaintiff was singled out for intentional disparate treatment. Unlike *Feldman* and *Springer*, the instant case presents no evidence of retaliation, intentional disparate treatment or any other kind of callous, intentional or malicious conduct that would make punitive damages appropriate.

Applying the relevant factors, we will uphold the District Court's decision to vacate the punitive damages award. The Borough's conduct was not so flagrant as to warrant punitive damages, particularly because there was a legitimate concern for the

10

safety of Dunmore citizens. *See BMW*, 517 U.S. at 575-576. Dee suffered no economic

harm, as he was suspended with pay and lost no job benefits once he was reinstated.

Furthermore, as stated earlier, there is no evidence of callous, intentional or malicious

conduct. *Id.*; *Campbell*, 538 U.S. at 416 (ruling that due process prohibits grossly

excessive or arbitrary punitive damage awards).

It follows that we will affirm the District Court's decision to vacate the punitive

damage award of $6,000.

### III.

In its cross-appeal, the Borough argues that the District Court should have granted

its motion for judgment as a matter of law with respect to Dee's due process claim.

Specifically, the Borough contends that the District Court erred in tasking the jury with

the application of the due process balancing test announced by the Supreme Court in

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1975). The Borough contends that the District

Court should have applied that test as a matter of law, rather than referring it to the jury.

We conclude, however, that we need not reach this issue because the Borough failed to

properly preserve any error committed by the District Court.

The Borough never objected prior to or during trial that the District Court should

not have referred the *Mathews* test to the jury. Rather, the only argument that it made

with respect to the *Mathews* test was that the evidence was insufficient to support a

11

verdict in favor of Dee.[3]  Moreover, as its counsel admitted, the Borough failed to object to the District Court's jury instructions on this issue.  As such, the Borough failed to preserve the issue of whether the District Court, rather than the jury, should have applied the *Mathews* factors.

The Borough's failure to preserve this issue for appeal is not affected by the fact that, in a different case arising out of similar facts, the District Court recognized its own error.  *See* Memorandum, *Smith v. Borough of Dunmore*, No. 3:05-CV-1343 (M.D. Pa. Sept. 21, 2011), ECF No. 182 at 4 ("The balancing of the *Mathews* factors by the jury and not the court was error. . . .").  Although this court has discretionary power to address waived issues in exceptional circumstances, this is not such a case.  *See Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009) (recognizing discretion to hear waived arguments where the issue's resolution is of public importance, where there is a risk of a miscarriage of justice, or where the issue is a purely legal one).  Moreover, the interests of justice are not served by permitting the Borough to raise novel arguments in this appeal.  Any prejudice resulting to the Borough from the District Court's mistake is attributable to the Borough's failure to raise the argument and advise the District Court of relevant case law.  We cannot permit parties who lose jury verdicts to raise on appeal novel legal

---

[3] To the extent the Borough intends to challenge on appeal the District Court's rejection of its argument based on insufficiency of evidence before the jury rendered its verdict, we will affirm.  As noted by the District Court, there was conflicting evidence on the Borough's motivation in suspending Dee.  *Cf. Dee v. Borough of Dunmore*, 549 F.3d 225, 233 (3d Cir. 2008 ) (recognizing a disputed issue of material fact as to the Borough's

arguments that they could have made, but failed to make, before the trial court. *See*

*United States v. Nee*, 261 F.3d 79, 86 (1st Cir. 2001) ("Th[e] 'raise-or-waive rule'

prevents sandbagging; for instance, it precludes a party from making a tactical decision to

refrain from objecting, and subsequently . . . assigning error . . . .") (cited in *Tri-M Group,*

*LLC v. Sharp*, 638 F.3d 406, 434 (3d Cir. 2011)).

Thus, the Borough waived its current argument that the District Court should not

have referred the *Mathews* test to the jury, and we decline to exercise our discretion to

consider that argument.

For the reasons set forth, we will affirm the District Court's judgment.

motivation in suspending Dee).