AMENDED PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4534
_____

EDWARD G. SMITH,
                                          Appellant

v.

BOROUGH OF DUNMORE; BOROUGH OF DUNMORE
COUNCIL; JOSEPH LOFTUS; THOMAS HENNIGAN;
JOSEPH TALUTTO; FRANK PADULA; LEONARD
VERRASTRO; MICHAEL CUMMINGS,
individually and as a Councilman


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cv-1343)
District Judge:  Hon. A. Richard Caputo
_____


Submitted Under Third Circuit LAR 34.1(a)
December 16, 2010

Before:  JORDAN, HARDIMAN and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: January 25, 2011)

————————

Cynthia L. Pollick
363 Laurel Street
Pittston, PA   18640
    *Counsel for Appellant*

Karoline Mehalchick
Oliver, Price & Rhodes
P.O. Box 240
1212 S. Abington Rd.
Clarks Summit, PA   18411
    *Counsel for Appellees*

————————

OPINION OF THE COURT

————————

JORDAN, *Circuit Judge*.

Edward Smith appeals the order of the United States District Court for the Middle District of Pennsylvania granting summary judgment against him on his due process claims under 42 U.S.C. § 1983 and on his state law defamation and right of privacy claims. Smith also appeals the District Court's judgment as a matter of law on his claim for punitive damages arising from a § 1983 retaliation claim that Smith prevailed on at trial. Finally, Smith appeals the District Court's partial denial of his motion for attorney's fees and costs. For the following reasons, we will vacate and remand in part and affirm in part.

## I. Background

### A. *Factual History*[1]

On May 20, 2005, Joseph Loftus, borough manager for the Borough of Dunmore in Pennsylvania ("Dunmore" or the "Borough"), asked Chief Vince Arnone of the Dunmore Fire Department to provide a list of required qualifications for full-time firefighters and to verify whether each Dunmore firefighter met those qualifications. Upon review of the information provided by Chief Arnone, Loftus concluded that Smith, who was a fire captain at the time, had not completed a required two-week Fire Academy training course. Loftus reported that conclusion to Dunmore's Borough Council, which made the decision to suspend Smith with pay until it could hold a hearing to address the apparent deficiency.[2]

---

[1] Because we are reviewing the District Court's grants of summary judgment and judgment as a matter of law, we set forth the facts in the light most favorable to Smith.

[2] The Council also made the decision to suspend Robert Dee, another Dunmore firefighter who, like Smith, had not completed the Fire Academy training course. Councilman Joseph Talutto explained the decision to suspend the firefighters immediately (rather than waiting until after the hearing), stating that they "ha[d] a duty to protect the town" and "didn't want it to go out there that we had firemen that weren't qualified" and "d[id]n't want to get blasted in the paper." (App. at 608, 612.)

3

On June 28, 2005, Loftus sent Chief Arnone a letter notifying him that Smith was suspended with pay pending a July 6, 2005 hearing. Two days later, a local newspaper published an article stating that Smith had been suspended for failing to complete the Fire Academy training. As the source of its information, the article cited Loftus's letter to Chief Arnone, which had been provided to the paper by a confidential source whose identity remains unknown.[3]

On July 6, 2005, a hearing was held before the Borough Council in which it was determined that, pursuant to the firefighter union's collective bargaining agreement ("CBA"), Smith, who had been a full-time firefighter since 1988, was not required to complete the Fire Academy training because his training and experience were treated as sufficient. Smith was reinstated after having been suspended for eight days but without having suffered any loss of pay or seniority.

As a result of his suspension and the publicizing of that suspension in the local paper, Smith filed suit against Dunmore on July 5, 2005, claiming defamation, due process violations, right of privacy violations, and retaliation. After filing suit, Smith had a conversation with Leonard Verrastro, a member of the Borough Council, in which Verrastro stated that, because of Smith's suit, he would vote against

---

[3] While the precise identity of the source remains in question, the District Court's opinion appears to assume that the pool of possible sources is limited to the members of the Borough Council. Neither party contests that view and, in fact, both seem to share it. We will likewise accept that conclusion for purposes of our analysis.

4

permitting Smith to retire early, despite a pension board recommendation that early retirement should be allowed. As a result, Smith amended his complaint to include a second claim for retaliation.[4]

### B. Procedural History

As amended, Smith's complaint named Dunmore, the Borough Council, Loftus, and five individual council members as defendants. It contained six claims: (1) a due process claim based on his pre-hearing suspension; (2) a defamation claim based on the false statement, published in the local paper, that he had not completed required training; (3) a right of privacy claim alleging that Defendants' acts placed him in a false light; (4) a right of privacy claim alleging that Defendants' acts brought publicity to his private life; (5) a retaliation claim based on the refusal to vote for his early retirement; and (6) another retaliation claim alleging that his suspension was in response to comments he had made regarding pension distributions. The Defendants moved for summary judgment on all claims.

On March 7, 2007, the District Court issued an order denying in part and granting in part the motion for summary

---

[4] The amended complaint initially stated that it was councilman Talutto, rather than Verrastro, who stated he would not vote to permit Smith's early retirement. In depositions, however, Smith testified that it was in fact Verrastro who made the statement, and the District Court allowed Smith to further amend the complaint to name Verrastro instead of Talutto.

5

judgment. The Court denied summary judgment for Defendants on Smith's claim that he was deprived of early retirement as retaliation for his filing suit, holding that there was a genuine issue of material fact as to whether the denial was in retaliation for Smith's lawsuit. The Court granted summary judgment in favor of Defendants on all other claims, holding that Smith's retaliation claim based on his pension comments failed because the record was devoid of any support for the claim; that the due process claim failed because Smith's eight-day paid suspension did not give rise to deprivation of either a property or liberty interest; that the defamation claim failed because Pennsylvania provides high public officials with an absolute immunity from defamation suits; and that both privacy claims failed because the information which was made public – that Smith had been suspended for lacking required training – concerned a public safety matter and was, therefore, a matter of public concern. The remaining retaliation claim was allowed to proceed to trial with only Verrastro and Dunmore as defendants.

On October 24, 2007, before trial commenced, Defendants made Smith a settlement offer of $1000 and early retirement. Smith declined the offer and trial began on October 29, 2007. At the close of Smith's case, the Court granted judgment as a matter of law to Defendants on the claim against Verrastro and on the claim for punitive damages. While the Court acknowledged evidence that the Dunmore Borough Council's refusal to vote on the pension board's recommendation for Smith's retirement could be retaliation for Smith's lawsuit,[5] the Court explained that the

---

[5] In addition to Verrastro's threat, deposition testimony disclosed alleged statements by Loftus and Councilmen Hart

6

Council was the decision maker and that Verrastro could not be individually liable for the Council's decision not to bring the recommendation to a vote. Likewise, Verrastro's individual threat to vote against Smith's early retirement could not constitute adverse employment action when no vote was ever taken. The Court also held that there was no evidence of evil, malicious, or reckless conduct that would justify punitive damages. On October 31, 2007, the retaliation claim against the lone remaining Defendant, Dunmore, was submitted to the jury, which returned a verdict in favor of Smith and awarded nominal damages of $1. After trial, pursuant to Smith's motion for equitable relief, the District Court ordered Dunmore to grant Smith early retirement.

On November 8, 2007, pursuant to 42 U.S.C. §1988(b), Smith filed a motion for attorney's fees and costs. Smith sought payment for attorney time of 404.8 hours at $300 per hour. The District Court found both numbers to be unreasonable, and reduced the hours to 268.9 and the hourly rate to $215.00, arriving at a total amount of $57,831.50 for attorney's fees. To that, the Court added additional amounts for legal assistant fees and fees associated with the fee action itself and arrived at a total lodestar amount of $72,261. Relying on *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983), which instructs that district courts may need "to adjust the fee upward or downward" based on considerations

---

and Cummings stating that Smith would be denied early retirement because of his lawsuit. There was also evidence that the Borough would have saved money by allowing Smith to retire early.

such as "the degree of success obtained," the District Court further reduced Smith's requested fees because Smith succeeded on only one of his six initial claims and ultimately obtained only $1 and early retirement – less than the $1000 and early retirement offered in settlement. Consequently, the Court reduced the award from the lodestar amount of $72,261 to $20,000. The Court also awarded $2,728.16 in total costs. Smith's timely appeal followed.

## II.    **Discussion**[6]

On appeal Smith argues that the District Court erred by granting judgment in favor of Defendants on his due process, defamation, privacy, and punitive damages claims, and he asks that each be remanded for trial. Smith also argues that the District Court erred by reducing his attorney's hourly rate to $215 and reducing the lodestar amount by more than 70 percent, and he asks us to award attorney's fees without those reductions. We will address each of Smith's arguments in turn.

### A.    *The District Court's Grant of Summary Judgment*

We review a district court's grant of summary judgment under a plenary standard, applying "the same test employed by the District Court." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). The non-moving party "is

---

[6] The District Court had jurisdiction over Smith's claims pursuant to 28 U.S.C. §§ 1331 and 1367(a), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

8

entitled to every favorable inference that can be drawn from the record," and we will affirm only if there is no genuine issue for trial. *Id.* (citing *Carrasca v. Pomeroy*, 313 F.3d 828, 833 (3d Cir. 2002)).

*(1)     Smith's Due Process Claims*

The District Court granted summary judgment on Smith's due process claims because the Court found that an eight-day paid suspension did not qualify either as deprivation of a property interest or as the "plus" prong of the "stigma-plus" test for establishing deprivation of a liberty interest in reputation. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) ("[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." (emphasis in original)). Because Smith had not established the required "plus" prong of the "stigma-plus" test, the Court declined to consider whether the "stigma" prong had been satisfied.

Smith argues that the Court's conclusions were in error and that remand is mandated by our decision in *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008). In *Dee*, we reviewed the due process claims of Robert Dee, another Dunmore firefighter who had been suspended along with Smith as a result of the same assertion that he had not completed required Fire Academy training. *Id.* at 228. Dee's due process claims had been disposed of on summary judgment for the same reasons Smith's had. *Id.* On appeal, we held that, because both 53 PA. STAT. ANN. § 46190 and the CBA allowed firefighters to be suspended only "for cause," Dee had a property interest in not being suspended

9

without cause. *Id.* at 230-32. Dunmore had argued, however, that its interest in ensuring that the Borough's firefighters were qualified was a public-safety interest that justified an eight-day paid suspension prior to any hearing. *Id.* at 233. We acknowledged that under *Matthews v. Eldridge*, 424 U.S. 319 (1976), a strong government interest can justify the pre-hearing deprivation of a property right, but found that there were "issues of disputed fact regarding the Borough's justification for suspending Dee without first affording him notice and a hearing." *Dee*, 549 F.3d at 233. Particularly, we noted that Dee had been a fireman for eighteen years, during which time he had been promoted numerous times by the Borough Council, and that Councilman Talutto stated that the Council acted so quickly because they "d[id]n't want to get blasted in the press." *Id.* We viewed those facts as undercutting Dunmore's argument that the pre-hearing suspension was based on concerns over public safety and, consequently, we remanded for consideration of the Borough's motives for the pre-hearing suspension. *Id.* Then, based on our holding that Dee had a property interest in not being suspended, we also concluded that Dee had satisfied the "plus" prong of the "stigma-plus" test, and remanded the liberty interest claim for consideration of the "stigma" prong. *Id.* at 233-235.

The facts here are indistinguishable from the facts in *Dee*: Both Dee and Smith were suspended at the same time under precisely the same circumstances; the same statute and CBA apply, mandating that Smith can be suspended only "for cause"; Talutto's deposition testimony in both cases suggests that press coverage, rather than public safety, may have motivated the suspension; and, like Dee, Smith had been a firefighter for almost eighteen years and had been promoted

10

numerous times by the Borough Council. Thus, we are compelled to follow our precedent in *Dee* and hold that "there exist issues of disputed fact regarding the Borough's justification for suspending [Smith] without first affording him notice and a hearing." *Id.* at 233.

We emphasize, however, that we are not suggesting that concerns over public safety cannot justify a paid eight-day pre-hearing suspension. To the contrary, we recognize that the strong government interest in public safety would almost certainly justify the comparatively minor deprivation inherent in an eight-day paid suspension. Instead, we conclude only that *Dee* requires us to say that there are legitimate factual questions as to whether public safety concerns were, in fact, what motivated the Borough Council. Accordingly, because genuine issues of material fact remain, we will remand Smith's due process claims to the District Court.

### *(2)     Smith's Defamation Claim*

Although the District Court found that Smith had made a prima facie case for defamation, it nonetheless granted summary judgment on the claim because Pennsylvania grants absolute immunity from defamation suits to high public officials, including borough council members. Smith argues that the grant of summary judgment to the Dunmore Borough Council members was improper because the disclosure of Loftus's letter to the newspaper fell outside the scope of their duties and, therefore, the immunity does not apply. We disagree.

11

Pennsylvania "'exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers.'"[7] *Lindner v. Mollan*, 677 A.2d 1194, 1995 (Pa. 1996) (quoting *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952)). Smith argues that, while the letter itself might have been prepared within the scope of the Council member's official duties, "the public disclosure of such a letter, which contains, in the district court's words, an 'untrue communication' resulting from a 'failure to exercise reasonable care and diligence,'" is not within those duties. (Appellant's Brief at 18-19.) That argument takes too narrow a view of the immunity. The fact that a statement is untrue cannot be a basis for exempting it from an immunity for defamation, as such an exception would swallow the immunity whole. Likewise, the fact that the untruth may have resulted from a "failure to exercise reasonable care and diligence," – i.e., from negligence – is immaterial to the invocation of an immunity that is intended to encompass even maliciously motivated comments. Thus, Smith's argument that the high public official immunity cannot apply under the circumstances of this case draws too narrow a boundary and is mistaken.

---

[7] Borough council members qualify as high public officials for purposes of this immunity. *See, e.g.*, *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005) (holding that borough council members qualify as high public officials); *Hall v. Kiger*, 795 A.2d 497, 500 (Pa. Commw. Ct. 2002) (same).

The proper bounds of the immunity are illustrated by the Pennsylvania Superior Court's decision in *McKibben v. Schmotzer*, 700 A.2d 484 (Pa. Super. 1997). There, a borough mayor accused a borough police chief of assaulting her and, as a result, she suspended the chief and filed a private criminal complaint against him. *Id.* at 487. Following the suspension, the mayor issued a news release explaining the chief's suspension and describing the "brutal and unprovoked assault" on her. *Id.* Shortly thereafter, a preliminary hearing was held on the assault charges and the criminal complaint was dismissed. *Id.* Immediately after that hearing, the mayor made a statement to reporters accusing the chief of lying. *Id.* After the chief prevailed in a defamation suit, the Superior Court on appeal held that high public official immunity applied to the mayor with respect to the news release because the mayor "was empowered to suspend [the chief], and her comments in the 'News Release,' although harsh and, as the jury found, untrue, were 'closely related' to her duties of supervising the borough police force." *Id.* at 491. By contrast, the Court held that the immunity did not apply with respect to her statement that the chief was lying because there, the mayor "was no more than a private citizen seeking to enforce her *private criminal complaint*." *Id.* at 492 (emphasis in original). Although not binding on us, the reasoning of *McKibben* persuasively illustrates the boundary between those actions that are taken in the course of an official's duties and those that are not.

Here, the disclosure of Loftus's letter to the newspaper is akin to the news release in *McKibben*. The information disclosed to the local paper regarding the basis for Smith's suspension was "'closely related' to [the] duties of supervising the borough [fire department]." *Id.* at 491.

13

Consequently, the District Court correctly concluded that Pennsylvania's high public official immunity shields the Council members from any claim for defamation, and we will affirm the Court's grant of summary judgment.

*(3)    Smith's Right of Privacy Claims*

The District Court granted summary judgment on Smith's false light claim and his claim for publicity given to private life because the Court found that the information which was made public – that Smith had allegedly failed to complete required training – involves public safety and, therefore, is a matter of public concern. Smith argues that this was error because his confidential employment information is not a matter of public concern. He also argues that whether the information is of "public concern" is relevant only to his publicity claim and is not an element of a false light claim. He is wrong on both points.

First, we have little difficulty concluding, as the District Court did, that the qualifications of firefighters are a public safety matter and, therefore, a matter of public concern. *See Chappel v. Montgomery Cnty. Fire Protection Dist.*, 131 F.3d 564, 578 (6th Cir. 1997) (holding that speech regarding the need for firefighters to receive improved training is a matter of public concern); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1564 (11th Cir. 1995) ("Few subjects are of more public concern to the average citizen than the provision of basic fire and rescue services."). The information's existence in a personnel file does not affect the public's interest in it, and we do not accept the premise that employment information is not of public concern when it

14

pertains to a firefighter's qualifications to be employed in the first place.

Second, Smith's claim that the public's interest in the information is not relevant to his false light claim has no grounding in Pennsylvania law, a fact demonstrated elsewhere in his own brief by his citation of *Strickland v. Univ. of Scranton*, 700 A.2d 979 (Pa. Super. 1997), for the elements of a false light claim: "(1) publicity, (2) given to private facts, (3) which could be highly offensive to a reasonable person, and (4) which are not of legitimate concern to the public." (Appellant's Brief at 20 (citing *Strickland*, 700 A.2d at 987.)); *see also Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. 1999) (listing "not of legitimate concern to the public" as an element of a false light claim). Because both of Smith's privacy claims require that the information not be of public concern and because there is no genuine dispute as to the public's interest in firefighter qualifications, Smith's privacy claims must fail as a matter of law. We will thus affirm the District Court's summary judgment on those claims.

> ### B. The District Court's Judgment as a Matter of Law on Smith's Claim for Punitive Damages

"We exercise plenary review over a district court's decision to grant judgment as a matter of law" and affirm "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, a verdict in favor of the nonmovant cannot be supported by legally sufficient evidence." *Toledo Mack Sales and Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d

204, 209 (3d Cir. 2008) (internal quotation marks and citations omitted).

Smith argues that the District Court erred by granting judgment as a matter of law on Smith's punitive damages claim against Verrastro because the record established that Verrastro intentionally disregarded Smith's federally protected rights. Smith has not appealed the judgment in favor of Verrastro himself, however. Even if we read Smith's appeal on punitive damages as implicitly appealing the judgment in favor of Verrastro, Smith has made no argument on that point and we find no fault in the District Court's conclusion that Verrastro cannot be individually liable for the Council's decision not to vote on Smith's retirement. Consequently, because Dunmore remains the only defendant for the retaliation claim, and because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), there is no proper defendant from which Smith can claim punitive damages. Accordingly, we need not consider Smith's argument that Verrastro intentionally disregarded Smith's rights, and we will affirm the District Court's judgment as a matter of law.

C.    *The District Court's Denial in Part of Smith's Motion for Attorney's Fees*

"We review the reasonableness of an award of attorney's fees for an abuse of discretion." *Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1034 (3d Cir. 1996).

16

*(1) The Reduction of Smith's Attorney's
Hourly Rate*

The District Court, finding that the requested rate of $300 per hour for Smith's attorney was excessive in light of her skill, reputation, and experience, reduced Smith's attorney's rate to $215 per hour. The Court supported that reduction by adopting its reasoning from *Lohman v. Duryea Borough*, No. 3:05-CV-1423, 2008 WL 2951070 (M.D. Pa. July 30, 2008), where it had recently considered a fee petition involving the same attorneys and substantially similar issues. In *Lohman* (as well as here), Smith's attorney supported her claimed $300 per hour rate by submitting affidavits from two local plaintiffs' attorneys who charged $300 and $330. *Id.* at *6-7. The Court determined, however, that her experience and skill were not comparable to those attorneys. *Id.* Instead, the Court found her experience to be comparable to one of the defense attorneys in *Lohman* and here, who charged between $125 and $170 per hour. *Id.* at *7-8. Based on that comparison, the District Court concluded that $215 was a reasonable hourly rate for Smith's attorney. *Id.* at *8. The Court adopted that same reasoning to settle on the $215 per hour rate in this case.

Smith argues that the reduction was an abuse of discretion because the Court inappropriately looked at the rates of defense attorneys. In support of that argument, he cites our decision in *Washington*, where we found a District Court's reduction of an hourly rate to be an abuse of discretion because it "focused on the market rates for defense attorneys." 89 F.3d at 1036. Here, however, the District Court did not focus on the market rates for only defense attorneys, but looked at the rates for both defense attorneys

17

with similar skill and experience and plaintiffs' attorneys with more skill and experience. The $215 per hour rate the Court then settled on fell between the $170 upper-end rate for a similarly experienced defense attorney and the $300 lower-end rate for the more experienced plaintiffs' attorneys. We cannot say that was an abuse of discretion. Consequently, we will affirm.[8]

### (2) The Reduction of the Lodestar Amount

The District Court reduced Smith's attorney's fees award from the lodestar amount of $72,261 to $20,000 because Smith had succeeded on only one of his six initial claims and ultimately received only $1 and early retirement, which was less than the $1000 and early retirement offered in settlement. While Smith objects to the District Court's consideration of settlement negotiations, we held in *Lohman v. Duryea*, 574 F.3d 163, 167-68 (3d Cir. 2009), that settlement negotiations can be used to consider the degree of success obtained by a party. Furthermore, the reduction is independently justified by Smith's failure to succeed on five of his initial six claims. The Supreme Court has stated that a

---

[8] Smith also seems to suggest that the reduction in his female attorney's rate may have had a discriminatory motive, citing a case in which the same district court awarded a male attorney an hourly rate in excess of the $215 awarded here and stating that "there is no reason why Smith's lawyer should not get the rate that male plaintiff civil rights' lawyers receive." (Appellant's Brief at 35.) The bald suggestion of discrimination is devoid of any support in the record and unworthy of further comment.

18

court "should award only that amount of fees that is reasonable in relation to the result obtained" and has emphasized that there should be no recovery for unsuccessful "claim[s] that [are] distinct in all respects from … successful claims." *Hensley*, 461 U.S. at 440. Here, Smith prevailed only on the claim that he was denied early retirement because of the filing of his lawsuit. His other unsuccessful retaliation claim as well as his unsuccessful due process, defamation, and privacy right claims were entirely distinct, requiring proof only of facts that predated any fact relevant to his successful retaliation claim. Consequently, under *Hensley*, Smith was not entitled to recover fees for those claims, and the District Court did not abuse its discretion when it reduced the award to appropriately reflect that limited success. We will therefore affirm.[9]

## III.  Conclusion

For the foregoing reasons, we will vacate the District Court's order to the extent it grants summary judgment on Smith's due process claims and will remand for consideration of whether the pre-hearing suspension was supported by an interest in public safety and, in addition, for consideration of whether Smith has satisfied the "stigma-plus" test, establishing deprivation of a liberty interest. We will affirm the order to the extent it grants summary judgment on Smith's defamation and privacy claims, the judgment as a matter of

---

[9] Should Smith ultimately prevail on his remanded due process claims, he is of course free to make a new motion seeking attorney's fees for that success.

19

law on Smith's punitive damages claim, and the partial denial of Smith's motion for attorney's fees and costs.