**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 11-3843
———

EDWARD G. SMITH
                            Appellant

v.

BOROUGH OF DUNMORE;
BOROUGH OF DUNMORE COUNCIL;
JOSEPH LOFTUS; THOMAS HENNIGAN;
JOSEPH TALUTTO; FRANK PADULA;
LEONARD VERRASTRO;
MICHAEL CUMMINGS, individually and as Councilman
———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3:05-cv-01343)
District Judge: Honorable A. Richard Caputo
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2013

Before: SMITH, GREENAWAY, JR., and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed: March 19, 2013)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Edward G. Smith ("Smith") appeals from three orders below: (1) an order denying Smith's motion *in limine* for the release of a confidential source by a newspaper reporter; (2) an order denying Smith's motion for application of collateral estoppel; and (3) an order granting summary judgment in favor of Defendants[1]. For the reasons that follow, we will affirm the orders of the District Court.

## I. Facts

Because we write for the parties, we review only the essential facts necessary for resolution.[2] This case has been before us once already. *Smith v. Borough of Dunmore* (*Smith I*), 633 F.3d 176 (3d Cir. 2011).[3] Smith became a firefighter for the Borough of Dunmore, Pennsylvania in 1988. On May 20, 2005, Joseph Loftus, the borough manager, demanded the Chief of the Dunmore Fire Department, Vince Arnone, provide him a memo outlining the necessary qualifications for full-time work and documentation on current staff members who met or did not meet those criteria. Smith, a fire captain at

---

[1] The Defendants referred to herein are the Borough of Dunmore, Pennsylvania, the Borough of Dunmore Council, and Michael Cummings, Joseph Loftus, Thomas Hennigan, Joseph Talutto, Frank Padula, and Leonard Verrastro, all individually and as councilmen.

[2] Additionally, because we are tasked with reviewing a grant of summary judgment, we set forth the facts in the light most favorable to Smith. *See Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511–12 (3d Cir. 1994) (factual inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true" (quoting *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992))).

[3] We have also issued two decisions in a companion case involving another firefighter from Dunmore. *See Dee v. Borough of Dunmore* (*Dee II*), 474 F. App'x 85 (3d Cir. 2012) (unpublished); *Dee v. Borough of Dunmore* (*Dee I*), 549 F.3d 225 (3d Cir. 2008). We have recognized these two cases are factually indistinguishable. *Smith I*, 633 F.3d at 180.

that time, had not completed a required two-week training course at the Fire Academy. The Borough Council thereafter decided to suspend Smith with pay pending a formal hearing on the matter. Smith's suspension took effect on June 28, 2005.

The Borough Council explained that the immediate suspension was based on its concern for the safety of the firefighters, taxpayers, and citizens. One Council member, Joseph Talutto, stated the Council had a duty "to protect the town," and that he did not want the Council "to get blasted in the paper." (Appendix ("App.") at A723–24.)

Two days after Smith's suspension, a local newspaper published an article detailing the incident. The article stated Smith was suspended for not completing the Fire Academy training and not having EMT certification.[4] The article's primary source was the internal Borough Council letter sent from Loftus to Chief Arnone, which was obtained from a confidential source. The article quoted Chief Arnone, who stated Smith was not necessarily required to have the Fire Academy training, as he was "grandfathered" because of his many years with the department. The article also quoted a Borough Council member who voted against the suspension. That member stated he "d[id]n't think [the matter] was looked at and researched enough" and that he "d[id]n't believe there's anything there that warrant[ed] a suspension." (App. at A719.) How exactly the newspaper received the Borough Council letter remains unknown.

On July 6, 2005, a hearing was held before the Borough Council. The hearing determined that pursuant to the Collective Bargaining Agreement governing the relationship between the Borough and the firefighters' union, Smith, since he had been an

---

[4] The allegation that Smith did not have EMT Certification is not supported by the record.

active firefighter since 1988, was not required to complete the Fire Academy training. His experience with the department and his other training were deemed satisfactory. Smith was then fully reinstated with the department, suffering a suspension for eight days without any loss of pay, seniority, or any other benefit. The next day, the same newspaper published another article detailing the events at the hearing and Smith's reinstatement.

On July 5, 2005, the day before the hearing, Smith filed suit against the Borough, claiming defamation, constitutional due process violations, right of privacy violations, and retaliation.[5] On March 7, 2007, the District Court granted summary judgment in favor of Defendants on all of Smith's claims, save his amended retaliation claim. That claim went to trial, and on October 31, 2007, the jury returned a verdict in favor of Smith, granting him nominal damages. Smith also was awarded attorneys' fees. Smith appealed the summary judgment order, and we affirmed on all grounds, but reversed the District Court's grant of summary judgment on Smith's due process claims. In light of our earlier decision in *Dee v. Borough of Dunmore* (*Dee I*), 549 F.3d 225 (3d Cir. 2008), we found that Smith had a property interest in not being suspended without cause and that issues of disputed material fact existed as to the Borough's motivation for suspending Smith. *Smith I*, 633 F.3d at 180–81. We therefore remanded Smith's due process claims to the District Court.

---

[5] After Smith filed his original complaint, a Borough Councilman made the statement that, because of Smith's suit, he would vote against Smith's early retirement despite a favorable pension board recommendation. As a result, Smith amended his complaint to include a second retaliation claim.

On remand, the District Court ordered on April 22, 2011 that the case would be presented to the jury only if genuine issues of material fact existed, and directed the parties to produce all evidence and respond to its concerns within twenty-one days. On May 27, 2011, the District Court denied Smith's motion *in limine* to have reporter Matthew Kemeny, the man who wrote both newspaper articles covering Smith's suspension and reinstatement, disclose the confidential source from whom he received the internal Borough Council letter. On September 21, 2011, the District Court denied Smith's motion that collateral estoppel should apply to preclude litigation on his due process claims. After the parties presented additional evidence and briefed the matter, the District Court granted summary judgment in favor of Defendants on September 23, 2011. Smith now appeals the orders denying his pretrial motions and the order granting summary judgment.[6]

## II.  Discussion

We review *de novo* both whether the District Court should have compelled discovery of the confidential source and whether summary judgment was appropriate. *Titan Sports, Inc. v. Turner Broad. Sys., Inc.* (In re *Madden*), 151 F.3d 125, 128 (3d Cir. 1998); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). Because Smith's request for issue preclusion involves nonmutual offensive collateral estoppel,[7] we review

---

[6] We exercise jurisdiction here under 28 U.S.C. § 1291.

[7] Nonmutual offensive collateral estoppel occurs where a "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

5

it for abuse of discretion. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248–49 (3d Cir. 2006).

Smith brings two due process claims under 42 U.S.C. § 1983, so he bears the burden to establish (1) a violation of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation of that right was committed by a person acting under color of state law. *See Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir. 1997). Smith complains of a deprivation of both a property and a liberty interest. We have already held he has a property interest in not being suspended without cause. *Smith I*, 633 F.3d at 180. So the remaining issue is whether, under the *Mathews* test,[8] Smith was entitled to a hearing before his suspension. As for his liberty interest, Smith alleges Defendants damaged his reputation by leaking the Borough Council letter to the press. In order to succeed on that claim, Smith must establish Defendants caused "a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). This is known as the stigma-plus test. *Id.*

### A. Confidential Reporter's Source

We agree that Smith's motion *in limine* to order disclosure of reporter Kemeny's confidential source was properly denied. Smith desired disclosure of Kemeny's source to support his liberty interest due process claim by establishing a link between the newspaper article and Defendants.

---

[8] *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Pennsylvania state law and federal common law grant journalists a qualified privilege to refuse to disclose their sources of information. 42 PA. CONS. STAT. § 5942; *Riley v. City of Chester*, 612 F.2d 708, 715 (3d Cir. 1979).[9] Those desiring to overcome this privilege must show (1) that the information sought is material, relevant, and necessary to the case; (2) that "there is no other source for the information requested"; and (3) that the information sought is "crucial" to the very heart of their claim. *Riley*, 612 F.2d at 716–17.

It is undisputed that the identity of the person who leaked the Borough Council letter to the press is material, relevant, and necessary to Smith's liberty interest due process claim. Indeed, the identity of that person can be considered "crucial" to Smith's satisfying the stigma-plus test.[10] But Smith has failed to establish that the information cannot be obtained by other means. The two Borough Council members not named as Defendants[11] were not questioned as to whether they leaked the letter. Additionally, Smith has not shown that all those with access to the letter (e.g., Borough office employees, etc.) were questioned as to the leak.

---

[9] During Kemeny's testimony, he mistakenly invoked Pennsylvania's Shield Law, 42 PA. CONS. STAT. § 5942, believing it to be the grounds of his reporter's privilege. Because state law does not govern the rule of decision here, the District Court correctly analyzed his privilege under the *Riley* framework. *See* FED. R. EVID. 501.

[10] As discussed, *supra*, to satisfy the stigma-plus test, Smith must establish Defendants caused "a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236.

[11] Paul Nardozzi and Tim Burke, Council Members during the time in question, were not named in Smith's complaint.

For those reasons, Smith has not met his burden under the *Riley* test. We will affirm the District Court.

## B. Collateral Estoppel

We agree that the District Court did not abuse its discretion in refusing to apply collateral estoppel to Smith's due process claims. Smith argues that nonmutual offensive collateral estoppel[12] should apply to prevent Defendants from litigating Smith's due process claims.

In *Dee v. Borough of Dunmore*, the district court tasked the jury with the application of the due process balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The district court later admitted it was error to have done so. *See Dee v. Borough of Dunmore* (*Dee II*), 474 F. App'x 85, 89–90 (3d Cir. 2012) (unpublished); Memorandum, *Smith v. Borough of Dunmore*, No. 3:05-CV-01343 (M.D. Pa. Sept. 21, 2011). Notwithstanding the error, the jury returned a verdict in the plaintiff's favor. Smith now wishes to have that finding apply against Defendants here.

Generally, collateral estoppel precludes parties from litigating issues at trial where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 249. Moreover, where, as here, a plaintiff

---

[12] As discussed, *supra*, nonmutual offensive collateral estoppel occurs where a "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co.*, 439 U.S. at 326 n.4.

attempts to assert nonmutual offensive collateral estoppel, the procedural posture presents "a unique potential for unfairness." *Id.* at 248–49. As a result, district courts "have broad discretion to determine when to apply non-mutual offensive collateral estoppel." *Id.* at 249 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

We agree with the District Court that all four technical requirements for application of collateral estoppel exist. Nonetheless, it was not an abuse of discretion for the District Court to refuse to apply nonmutual offensive collateral estoppel in these circumstances. Generally, the ultimate issue of whether due process was afforded to Smith was a question of law for the court to determine. *See Rodgers v. Norfolk Sch. Bd.*, 755 F.2d 59, 62 (4th Cir. 1985). Submission of the due process issue to a jury may not always be reversible error. *See id.* But it was not an abuse of discretion in the instant case for the District Court to decline application of collateral estoppel after acknowledging its previous error.

Because it was not an abuse of discretion for the District Court to have concluded that application of nonmutual offensive collateral estoppel "would be unfair" to Defendants, *Parklane Hosiery*, 439 U.S. at 331, we will affirm.

### C. *Summary Judgment*

We agree that summary judgment was appropriate here, as the evidence presented established that, as a matter of law, Smith received due process, including constitutionally adequate postdeprivation remedies, and cannot satisfy the stigma-plus standard.

Smith argues that summary judgment was inappropriate for two reasons. First, Smith claims that our decision in *Smith I* established that genuine issues of material fact existed in the case, and that our remand order implied a demand that the case go to trial. Second, Smith argues that it was error for the District Court to summarily adjudge his liberty interest due process claim because the July 6, 2005 hearing was not a sufficient "name-clearing" hearing, and, alternatively, other legal damages were available.

A party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A court may order summary judgment *sua sponte*, but only after identifying the issue for the parties and allowing them time to respond. *See* Fed. R. Civ. P. 56(f)(3). Hence, the District Court had authority to issue the April 22, 2011 Order alerting the parties to its concern and directing evidence production and briefing on the due process claims.

Our decision in *Smith I* did not prevent the District Court's from exercising its authority under Rule 56(f)(3). In *Smith I*, we remanded for two reasons. First, we reversed the District Court's finding that Smith did not have a property interest in not being suspended without cause. *Smith I*, 633 F.3d at 180. Second, we found that the factual record was not yet fully developed. *Id.* at 180–81. Although we recognized that "genuine issues of material fact remain[ed]," like the remand order in the *Dee* companion case, our order of remand was concerned not with mandating that Smith receive a trial but with ensuring the District Court properly performed the *Mathews* test with the benefit of a fully developed factual record. *Cf. Dee I*, 549 F.3d at 233, 235 n.12 (discussing the

10

further proceedings intended upon remand as involving a more fully informed *Mathews* analysis).  As a result, Smith's first argument fails.

We agree that the District Court properly granted summary judgment to Defendants on the property interest due process claim.  Under the *Mathews* test, the proper procedural process due a plaintiff is determined by consideration of (1) the private interest affected, (2) the risk of an erroneous deprivation of that interest under the process given and the probable value of additional process, and (3) the government interest at issue.  *Mathews*, 424 U.S. at 335.

The District Court found that the dispute as to what, exactly, were the motivations behind Smith's suspension created a genuine issue of material fact.  Nonetheless, the District Court found summary judgment was still appropriate because Smith's deprivation was so small that the absence of a predeprivation hearing was justified by a government interest in either proffered Borough Council motivation—i.e., public safety or avoiding negative press, which could undermine the Council's leadership.

We agree with the District Court that because, overall, the deprivation of Smith's property interest was incidental at best, the absence of a predeprivation hearing is justified under either alleged government interest.  Smith was suspended for only eight days, during which he received no cut in pay, benefits, or seniority.  He also received a speedy and adequate postdeprivation hearing.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000).  Both government interests are sufficient to justify this minimal intrusion upon Smith's property interest.  Moreover, the District Court mischaracterized the factual dispute here as "material."  A fact is material only if it

11

"could affect the outcome of the proceeding." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)) (internal quotation mark omitted).  Therefore, because no issues of material fact exist and we find adequate process was provided Smith, we will affirm the District Court's grant of summary judgment as to Smith's property interest due process claim.

Finally, we agree that the District Court properly entered summary judgment in favor of Defendants on Smith's liberty interest due process claim.  The stigma-plus test is met where a plaintiff-employee proves "creation and dissemination of a false and defamatory impression," i.e., the "stigma," and that an adverse employment action was taken against the employee.  *Hill*, 455 F.3d at 236.  The "stigma" must be made public and the adverse employment action satisfies the "plus" prong if the employee suffered an injury to a property interest.  *Id.* at 236–38.  Smith had a property interest in not being suspended without cause.

The District Court did not determine if Smith could establish "stigma," because it found that the July 6, 2005 hearing was a constitutionally sufficient "name-clearing" hearing and that no further procedural protection was necessary.  We agree.  Although we have not held that legal damages are not available for violations under the stigma-plus doctrine, see *Hill*, 455 F.3d at 236 n.15, under the *Mathews* test, the July 6, 2005 hearing and the newspaper article published the following day sufficed to provide Smith with a remedy for any harm done to his reputation.

Even so, we also find that the facts, even taken in a light most favorable to Smith, do not establish that the "stigma" prong is met here.  Smith's alleged "stigma" is the June

12

30, 2005 newspaper article discussing his suspension. The only false statement in the article is that Smith lacked necessary EMT training. But the letter goes on to include quotes from Chief Arnone, who explicitly stated that Smith was not subject to those requirements, and Councilman Nardozzi, who stated that he didn't think a suspension was warranted. As a result, any damage done to Smith's reputation by this article was minimal, and did not put his "good name, reputation, honor, or integrity . . . at stake." *Id.* at 235 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). Additionally, although the article was based on a letter leaked from the Borough Council, Smith has presented no facts linking the Borough or any of the Defendants with the dissemination of the source to the newspaper. As a result, even assuming Smith would be entitled to a remedy in addition to, or other than, a "name-clearing" hearing, he has not presented facts enough to support his liberty interest due process claim, and the District Court was correct to grant judgment as a matter of law to Defendants. We will affirm.

## IV.

For the reasons set forth, we will affirm the Orders and Judgment of the District Court.