NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1596
_____

ROBERT K. DEE, JR.,

Appellant

v.

BOROUGH OF DUNMORE;
BOROUGH OF DUNMORE COUNCIL; JOSEPH LOFTUS;
THOMAS HENNIGAN; JOSEPH TALUTTO; FRANK PADULA;
LEONARD VERRASTRO; MICHAEL CUMMINGS, individually and as Councilman
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-05-cv-01342)
District Judge:  Honorable A. Richard Caputo
_____

Argued November 13, 2013
Before:  HARDIMAN, SHWARTZ and SCIRICA, *Circuit Judges*.

(Filed: December 3, 2013)

Cynthia L. Pollick (Argued)
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640
        *Attorneys for Plaintiff-Appellant*

Erin A. Brennan (Argued)
Karoline Mehalchick
Oliver, Price & Rhodes
1212 South Abington Road

Clarks Summit, PA 18411
      *Attorneys for Defendant-Appellee*

_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

Robert Dee, Jr., appeals the District Court's order granting in part and denying in part his motion for attorney's fees and costs. We will affirm.

I

This case comes to us for the third time and, as we write only for the parties, we provide a brief recitation of the facts.

The Borough of Dunmore suspended Dee, who was an Assistant Fire Chief, on June 27, 2005, for allegedly not completing two weeks of training and failing to obtain emergency medical technician certification. Three days later, *The Scranton Times-Tribune* publicized Dee's suspension and alleged unfitness for service. Dee then sued the Borough of Dunmore, Borough Manager Joseph Loftus, and five Borough councilmen in the United States District Court for the Middle District of Pennsylvania. Dee's claims arose out of two factually distinct episodes: his suspension and the publicity surrounding it. A jury found that Dee's suspension constituted a procedural due process violation cognizable under 42 U.S.C. § 1983. The jury found Defendants not liable, however, on the claims arising out of the publicity, which consisted of a First Amendment stigma-plus

2

claim and state law claims of invasion of privacy, defamation, and publicity given to a private life. The jury awarded Dee $150,000 in compensatory damages and $6,000 in punitive damages.

Defendants moved for and the District Court granted a remittitur, reducing the compensatory damages award to $50,000 and dismissing the $6,000 punitive damages award. We affirmed the District Court's remittitur last year. *See Dee v. Borough of Dunmore*, 474 F. App'x 85 (3d Cir. 2012). Dee opted for a new damages trial instead of the remitted award. Before the second trial began, Defendants filed a $60,000 offer of judgment pursuant to Fed. R. Civ. P. 68. After Dee rejected Defendants' offer of judgment, the second jury awarded Dee $47,500 in compensatory damages.

As a prevailing plaintiff in a case arising under 42 U.S.C. § 1983, Dee sought $230,162.50 in attorneys' fees and $10,427.43 in costs pursuant to 42 U.S.C. § 1988. He also sought a 50 percent enhancement above the lodestar. The District Court granted Dee $60,000 in attorney's fees and $6,938.56 in costs. Dee filed this timely appeal.[1]

II

Whether the District Court applied the proper standards in calculating reasonable attorney's fees is a question of law over which we exercise plenary review. *Washington v. Phila. County Ct. of Common Pleas*, 89 F.3d 1031, 1034–35 (3d Cir. 1996). We

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

review the attorney's marketplace billing rate for clear error and the reasonableness of the

District Court's award of fees for abuse of discretion. *Id.*

## III

Attorney fee awards pursuant to § 1988 are based on the lodestar, which is the

product of the attorney's hours and rate. There is a strong presumption that the lodestar

is a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Nevertheless, a court may adjust this figure upward or downward when the lodestar is

unreasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Under the *Hensley*

framework, the petitioner's "results obtained" in the action, which is the level of the

prevailing party's success, is a "crucial" factor. *Id.* at 430, 434.

Courts apply a burden-shifting analysis to calculate the lodestar. The petitioner

must produce evidence that the hours spent and rate charged are reasonable. *Rode v.*

*Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Once the petitioner has done so, the

burden shifts to the respondent to challenge the attorney's hours, hourly rate, and the

reasonableness of the product of those numbers. *Id.* Following an objection to a fee

request, district courts have discretion to adjust the hours and rates and to increase or

decrease the lodestar based on other considerations raised by the respondent. *Id.*

## A

Here, the District Court approved 370.85 hours for Dee's attorney, Cynthia

Pollick, along with 234.7 hours for her legal assistants and 129.95 hours for her legal

4

researchers. The District Court reviewed Pollick's time records for Dee's case and subtracted the hours Defendants rightly challenged as "excessive, redundant, or otherwise unnecessary." *See Pub. Interest Research Group v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley*, 461 U.S. at 433–34).

We hold that the District Court did not abuse its discretion by making these deductions. The District Court subtracted four-tenths of one hour that Pollick billed for speaking with Dee's mother because the conversation had no relationship to the case and removed 2.2 hours that Pollick spent speaking with the news media because that time was not compensable. Dee claims entitlement to 10 hours for his attorney's preparation of the fee petition, but these hours were billed after the offer of judgment and, as explained in note 3, were therefore properly excluded by the District Court. He also contends that the District Court erred by crediting Pollick with 12.5 hours instead of 24.5 hours for her preparation for an appellate argument because we once found 26 hours to be a reasonable amount of time spent on appellate argument preparation. *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Dee fails, however, to explain why *Maldonado* is similar enough to this appeal to support the same result.

We also affirm the District Court's halving of 88.2 hours that overlapped with another case that his attorney prosecuted. On the same day Pollick filed Dee's case, she filed a lawsuit on behalf of Edward Smith, a captain for the Borough of Dunmore Fire Department. *See Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2007 WL 762930

5

(M.D. Pa. Mar. 7, 2007).  When the Borough of Dunmore suspended Dee, it also suspended Captain Smith, and *The Scranton Times-Tribune* covered the suspension of both men.  *Id.* at *1.  The cases were consolidated for discovery, and many of the hours Pollick spent on Dee's case also served Smith's case.

When Pollick prepared Smith's fee petition, she included in full some of the hours that benefitted both cases.  Where certain hours benefit two cases, each fee petition should request half of the time.  The District Court found 128.2 hours on Pollick's bill for Smith's case that also benefitted Dee and subtracted half, 64.1 hours, from the total recoverable hours for Smith.  *See Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2008 WL 4542246, at *4 (M.D. Pa. Oct. 9, 2008).  Despite the fact that Pollick was paid for 50 percent of the *Smith* time entries, her fee petition in *Dee* sought payment in full for many of these same hours.  This was plainly improper.  Defendants objected to 88.2 hours in Dee's fee petition that were beneficial to both cases, and the District Court subtracted 44.1 hours from the total hours.

Dee neither disputes the propriety of halving jointly beneficial hours nor argues that the District Court erred in classifying any of the hours as such.  Rather, he claims the District Court should have credited him the 64.1 hours it deducted from Smith's fee petition.  This argument fails to recognize the independence of the two fee petitions.  It was incumbent upon the District Court to review Dee's fee petition on its own merits.

Defendants objected to 88.2 hours, and the record supports the District Court's

conclusion that those hours were, in fact, jointly beneficial.[2]

For the reasons stated, we find no error in the District Court's calculation of the

number of compensable hours worked by Dee's legal team.[3]

B

We turn next to Dee's challenge to the District Court's decision to fix an hourly

rate of $250 instead of the $300 requested. We hold that this finding was not clear error.

The attorney's reasonable hourly rate is the prevailing rate in a legal market for an

attorney of similar experience and skill. *Maldonado*, 256 F.3d at 184. "[A] district court

may not set attorneys' fees based upon a generalized sense of what is customary or

proper, but rather must rely upon the record." *Coleman v. Kay*, 87 F.3d 1491, 1510 (3d

Cir. 1996). The defendant may contest the plaintiff's prima facie case only with

---

[2] In fact, our independent review of the record demonstrates that Dee was paid for duplicative time entries to which Dunmore failed to object. For example, Pollick billed both Smith and Dee for two-tenths of one hour for correspondence with the Borough of Dunmore and the Pennsylvania Attorney General on July 1, 2005. *See* App. at 66; Plaintiff's Exhibit A at 1, *Smith v. Borough of Dunmore*, No. 3:05-CV-1343 (M.D. Pa. Oct. 9, 2008). Defendants objected in *Smith* but not *Dee* that the time was jointly beneficial to both cases, thus Pollick was paid 0.3 hours for actually working 0.2 hours. *See* App. at 112; Defendants' Exhibit C at 1, *Smith v. Borough of Dunmore*, No. 3:05-CV-1343 (M.D. Pa. Oct. 9, 2008).

[3] Dee also claims the District Court erred by subtracting the hours Pollick worked after Defendants made their Rule 68 offer of judgment. We reject this argument out of hand. Rule 68(d) requires the offeree to bear costs after the offer is rejected if the plaintiff's judgment is not more favorable than the defendant's offer of judgment. The

appropriate record evidence, and in the absence of such evidence, the petitioner must be awarded fees at the requested rate. *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).

In support of his requested rate, Dee submitted an affidavit from Pollick and a sworn declaration from an attorney in Shavertown, Pennsylvania, stating that $300 was reasonable. Defendants disagreed, arguing that Pollick's reasonable hourly rate was $215. In support of this assertion, Defendants cited three cases in which Judge A. Richard Caputo, the same district judge deciding Dee's fee petition, found $215 to be a reasonable hourly fee for Pollick. *See* Defendants' Brief in Opposition to Plaintiff's Motion for Attorney Fees and Costs at 5–6, *Dee v. Borough of Dunmore*, No. 05-CV-1342, 2013 WL 685144 (M.D. Pa. Feb. 25, 2013). The District Court disagreed with both sides, settling on $250 as a reasonable hourly rate.

Citing the fact that Defendants did not submit affidavits contesting Pollick's evidence in support of a $300 rate, Dee argues the District Court failed to rely on record evidence in decreasing Pollick's fee. The record evidence supporting a decrease from Dee's requested $300 rate consists of the three prior cases by Judge Caputo setting Pollick's rate at $215 which Defendants raised and the two cases Judge Caputo cited in the opinion below. The first of the cases Judge Caputo cited is a prior case in which he

---

Defendants made a valid offer of judgment of $60,000, which Dee rejected, and that offer exceeded the $47,500 jury verdict.

set Pollick's rate at $250. In the second prior case, another district judge in the Middle District of Pennsylvania set Pollick's rate at $225.

We first opined on whether a district court's prior determination of a particular attorney's hourly rate constituted record evidence for a subsequent fee petition in *Black Grievance Committee v. Philadelphia Electric Co.*, 802 F.2d 648 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987). In that case, petitioners sought fees at their attorneys' regular hourly billing rates, which they submitted to the court in affidavits. The Philadelphia Electric Company (PECO) contested the hourly rates for two of the Committee's three attorneys by citing two cases in which the same district court assigned the same attorneys a lower hourly rate than what the Committee sought for those attorneys. 802 F.2d at 651–52. The district court found that the prior cases established the attorneys' market rates for the months covered by those prior cases and accordingly reduced the attorneys' rates for the months that were contemporaneous with the Black Grievance Committee's case. *Id.* at 652. The district court went on to find there was "insufficient evidence" to support the rates claimed by those attorneys for the time immediately after the two prior cases ended, and the court lowered the rate from the Committee's requested rate to an hourly rate in between that rate and the rate in the prior cases. *Id.* at 652–53.

*Black Grievance Committee* held that prior cases are record evidence only to the extent they overlap with the fee petitioner's case. We found that the hourly billing rate in

9

the prior cases PECO cited established a factual basis for the attorneys' respective market rates only for the duration of those cases and not for the time after the prior cases concluded. *Id.* at 652. Because PECO provided no other record evidence contesting the Black Grievance Committee's evidence for the attorneys' rates, the Committee's affidavits were uncontested for the time that was not contemporaneous with the prior cases, and we instructed the district court to use the rates averred by the Committee. *Id.* at 652–53.

Unlike the error committed by the district court in *Black Grievance Committee*, here Judge Caputo did not err by reducing Pollick's hourly rate in reliance on his prior cases because they are contemporaneous with Dee's case, which ran from the filing of the complaint in July 2005 to Defendants' offer of judgment in October 2010. The cases Defendants cited for a prior rate of $215 were litigated from July 2005 to April 2008.[4] The case Judge Caputo cited for a prior rate of $250 spanned March 2006 to February 2012. *See Supinski v. United Parcel Service*, No. 06-CV-00793, 2012 WL 2905458

---

[4] The *Lohman* and *Guarnieri* lawsuits ran from July 2005 to April 2008. *See Guarnierei v. Borough*, No. 3:05-CV-1422, 2008 WL 4541999 (M.D. Pa. Oct. 9, 2008); *Guarnieri v. Borough*, No. 3:05-CV-01422, 2008 WL 4132035 (M.D. Pa. Sept. 2, 2008); *Lohman v. Borough*, No. 3:05-CV-1423, 2008 WL 2951070 (M.D. Pa. July 30, 2008); *Lohman v. Borough*, No. 3:05-CV-1423, 2007 WL 4260943 (M.D. Pa. Nov. 29, 2007). The *Smith* lawsuit ran from July 2005 until November 2007. *See Smith v. Borough of Dunmore*, No. 3:05-CV-1343, 2008 WL 4542246 (M.D. Pa. Oct. 9, 2008).

(M.D. Pa. July 16, 2012); *Supinski v. United Parcel Service*, No. 3:CV-06-0793, 2008 WL 5510545 (M.D. Pa. Feb. 13, 2008).[5]

Accordingly, we hold that the District Court applied the correct standards from *Black Grievance Committee* in setting a reasonable attorney's fee for Pollick, and that it did not clearly err by settling upon a $250 hourly rate. The District Court stated it did not accept the $300 rate because that rate was unreasonably high, and its reduction from Dee's prima facie case is supported by record evidence.[6]

## C

After multiplying attorney Pollick's hours and rate, the District Court established a lodestar amount of $123,310. Finding that such a fee would be unreasonably high, the District Court decreased the lodestar to $60,000. Dee claims this decision was an abuse of discretion.

---

[5] Dee cites our decision in *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996), to argue the District Court's decrease was unsupported by record evidence, but this case is distinguishable. In *Washington*, we vacated and remanded the district court's reduction of an attorney's hourly rate because the reduction was based on two prior cases that were later discredited, which left the district court's determination of the hourly rate unsupported. 89 F.3d at 1035–36. In this case, however, we have not vacated the hourly rate calculations in the prior cases the District Court relied on.

[6] In *Smith v. Borough of Dunmore*, 633 F.3d 176 (3d Cir. 2011), Pollick implied Judge Caputo may have had a discriminatory motive because he once authorized a higher fee for a male attorney with similar experience. We said then that "[t]he bald suggestion of discrimination is devoid of any support in the record and unworthy of further comment." *Smith*, 633 F.3d at 184 n.8. Pollick reprises that argument in this appeal, but it fares no better for the same reason.

Although the lodestar carries a strong presumption of reasonableness, *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990), other considerations may lead the court to reduce it. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Supreme Court emphasized that when the plaintiff's lawsuit contains "distinctly different claims for relief that are based on different facts and legal theories," the unsuccessful claims cannot be considered to have been litigated in furtherance of the result achieved and should be excluded. *Id.* at 434–35. If the district court decreases the lodestar, it may not reduce an award by a particular percentage or amount in an arbitrary or indiscriminate fashion—even if the decrease is made for justifiable reasons. *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 51 (3d Cir. 1978).

Here, we find no abuse of discretion in the District Court's reduction of the lodestar in light of Dee's failure to prevail on the factually distinct claims. Dee was unsuccessful on his First Amendment claim and on his state law claims for invasion of privacy, defamation, and publicity given to a private life. His successful procedural due process claim is factually distinct from his unsuccessful claims because the procedural due process claim stemmed from his eight-day suspension, whereas his unsuccessful claims all arose out of the publicity following the suspension. Significantly, we endorsed a similar downward departure from the lodestar in Dee's companion case, *Smith v. Borough of Dunmore*, 633 F.3d 176 (3d Cir. 2011). There, we affirmed Judge Caputo's reduction of the lodestar from $72,261 to $20,000 because Captain Smith succeeded on

12

only one of his six claims, and the five unsuccessful claims arose out of the factually distinct publicity from the suspension. 633 F.3d at 184. The similarity of the two cases yields the same result in this appeal.

Dee claims the District Court made an unlawful double deduction by eliminating 18.1 hours from the lodestar for his unsuccessful claims and then anchoring the reduction from the lodestar in part on those same unsuccessful claims. There is no precise formula for accounting for the plaintiff's unsuccessful claims, and the District Court has considerable discretion in this regard. *Hensley*, 461 U.S. at 436–37. The District Court excised only the hours that were readily identifiable as solely related to the unsuccessful claims. Accordingly, the District Court's reduction from the lodestar was necessary to account fully for Dee's limited success.

In addition to Dee's limited results obtained, the District Court considered some of the factors from the Fifth Circuit's influential decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Dee argues this was error because the Supreme Court "eliminated the evaluation of the *Johnson* factors," Br. of Appellant at 10, in *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010). We disagree. While *Perdue* noted the objective quality and predictable results from the lodestar approach over *Johnson*'s open-endedness, the Supreme Court held that deviations from the lodestar may still be permissible "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."

13

*Id.* at 554. This holding is consistent with *Hensley*, which instructed that "[t]he district court also may consider other factors identified in [*Johnson*], though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9. The District Court's analysis adhered to this standard; it relied on the relative ease of litigating a procedural due process claim, the fact that Pollick did not demonstrate any special ability in her prosecution of the case, and the fact that Dee's case was not an undesirable case. The last factor recognizes that Congress enacted § 1988 to encourage the litigation of cases that otherwise may not be brought. Because none of these factors was incorporated into the District Court's lodestar analysis, we find no error in the legal standards the District Court applied.

We have long cautioned against arbitrary departures from the lodestar. *See Prandini*, 585 F.2d at 51; *Lindy*, 540 F.2d at 115. And we have vacated and remanded fee petitions for terseness when a district court's vague analysis leaves us without a basis for review. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000). Here, although the District Court calculated the lodestar with meticulous detail, it decreased the lodestar by more than half with only a few sentences of explanation. Although it would have been better for the District Court to say more in this regard, its reduction is supported in law and fact. Accordingly, we hold that it did not abuse its discretion in failing to provide a more fulsome justification.

14

IV

For the reasons stated, we will affirm the judgment of the District Court.